IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHERRICK DEWAYNE RINGER, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:07-CV-501-A |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|     Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Sherrick Dewayne Ringer, TDCJ-ID #1162763, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Amarillo, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

#### C. FACTUAL AND PROCEDURAL HISTORY

At trial, Ringer's daughter, A.R., then twelve years old, testified that when she was ten years

old, Ringer, who had court-ordered visitation with A.R. and her brother every other weekend, began sexually assaulting her in his home. When A.R. was eleven years old, she told her mother, Debbie Sloan, about the sexual abuse. A.R. also told the sexual assault nurse examiner that Ringer had touched her vagina with his mouth and his penis and fondled her breasts and that he had put his penis in her mouth. Her genital exam was normal. (4Reporter's R. at 17-44, 96-97, 103, 142) Ringer told Officer Leddy Fowler that A.R. initiated the sexual contact after watching an X-rated movie and that he had penetrated A.R.'s vagina with his finger and penetrated her mouth with his penis. (*Id.* at 192-93; 8Reporter's R., State's Exhibit 2) Nevertheless, at trial, Ringer denied having any sexual contact with A.R. (5Reporter's R. at 13-15) Instead, he claimed that A.R.'s mother attempted to blackmail him by telling him she wanted $800 or she would report the alleged abuse to authorities. (*Id.* at 23-25)

On April 10, 2003, a jury found Ringer guilty of four counts of aggravated sexual assault of a child under 14 years of age and assessed his punishment at fifty years' confinement on each count, the sentences to run concurrently. (State Habeas R. at 195) He appealed his convictions, however the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused his petition for discretionary review. *Ringer v. Texas*, No. 2-03-146-CR, slip op. (Tex. App.–Fort Worth May 13, 2004); *Ringer v. Texas*, PDR No. 0984-04. Ringer also filed a state habeas application, raising the issues presented, supported by a hand-written letter by A.R. dated February 16, 2004, recanting her allegations of sexual abuse and the affidavits of Sloan, A.R.'s grandmother, and Ringer's wife Regina. (State Habeas R. at 2-36) The state habeas judge, who also presided over Ringer's trial, held both a hearing by affidavit and a live hearing, at which A.R., then seventeen years old, testified that her prior testimony regarding the sexual abuse

2

was false and Sloan and A.R.'s grandmother testified that A.R. told them she had lied about the abuse. (Reporter's R. of Hrg.) The trial found A.R.'s recantation testimony incredible and the remainder of Ringer's claims unmeritorious and recommended habeas relief be denied. Thereafter, the application was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. *Ex parte Ringer*, State Habeas Appl. No. WR-64,932-01. This federal petition followed.

### D. ISSUES

Ringer states the following grounds for habeas relief:

(1)  He is actually innocent of the crimes for which he was convicted;

(2)  He was denied counsel of choice;

(3)  The indictment was fundamentally defective;

(4)  The jury was unconstitutionally selected and empaneled; and

(5)  He was denied effective assistance of retained and appointed counsel. (Petition at 7-8(h))

### E. RULE 5 STATEMENT

Quarterman believes that Ringer has sufficiently exhausted his state remedies with regard to the claims presented as required by 28 U.S.C. § 2254(b)(1). (Resp't Answer at 7)

### F. LEGAL STANDARD IN HABEAS CASES

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### G. DISCUSSION OF THE ISSUES

#### 1. *Actual Innocence*

Ringer claims A.R.'s testimony at the state habeas evidentiary hearing recanting her trial

4

testimony proves that he is actually innocent of the offenses. Actual-innocence claims are not cognizable on federal habeas review in this circuit. *See Foster v. Quarterman*, 466 F.3d 359, 367-68 (5th Cir. 2006). The purpose of federal habeas corpus is "to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." *Herrera v. Collins,* 506 U.S. 390, 399 (1993); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).

Even if Ringer's claim were cognizable, the state habeas court, having observed A.R.'s testimony and demeanor at trial and at the habeas hearing, entered express findings that A.R.'s later recantations were not credible in light of her pretrial statements to the prosecutor, her trial testimony, and the testimony of the nurse examiner and Officer Fowler. (State Habeas R. at 140-41, 166-69) The state court found A.R.'s recanting testimony against Ringer was lacking in trustworthiness and credibility, as it was entitled to do. *May v. Collins*, 955 F.2d 299, 313-14 (5th Cir. 1992). "[R]ecanting affidavits and witnesses are viewed with extreme suspicion by the courts." *Id.* at 314 (citing *United States v. Adi*, 759 F.2d 404, 408 (5th Cir. 1985)).

## 2. *Counsel of Choice*

Ringer complains that he was denied his right to counsel of choice when the trial court appointed Richard Alley as lead counsel two days before trial at the request of Ringer's retained counsel Layne Harwell and Myron Kimball Jr. (Petition at 7-7(b)-(c); Clerk's R. at 92) The record indicates that in March 2001 Ringer retained Harwell as lead counsel and Kimball as second chair. (State Habeas R. at 126-27) Harwell became too ill to try the case, and, the trial court appointed Alley, in open court, after Harwell explained why he was incapable of continuing as lead counsel. Ringer did not object to the appointment at the time and apparently consented to it during the trial. (*Id.* at 111, 127)

5

The Sixth Amendment right to counsel in a criminal proceeding has long been construed to include a criminal defendant's qualified right to retain counsel of the defendant's own choosing. *See Newton v. Dretke*, 371 F.3d 250, 255-56 (5th Cir. 2004); *United States v. Hughey*, 147 F.3d 423, 429 (5th Cir. 1998). However, the Sixth Amendment does not afford a defendant an absolute and unqualified right to counsel of choice even when counsel is retained. *See United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976). Rather, what is required is that the defendant be given a fair or reasonable opportunity to obtain particular counsel. *See United States v. Paternostro*, 966 F.2d 907, 912 (5th Cir. 1992).

Both Kimball and Alley testified in the state habeas proceeding by affidavit. (State Habeas R. at 109, 126) Based on the affidavits, the state habeas court found that Kimball did not feel qualified to be lead counsel and requested appointment of an experienced criminal attorney. Alley, who had primarily engaged in the practice of criminal law and who had been licensed since 1982, was appointed to represent Ringer and assist Kimball, and Ringer consented to the appointment. Under these circumstances, Ringer was not denied his Sixth Amendment right to counsel of choice.

*3. Validity of Indictment*

Ringer complains the indictment was fundamentally defective because it "charged a void penal statute." (Petition at 7(c)) Ringer raised this claim for the first time in his state habeas application, however, under state law, claims of unraised alleged defects of form or substance in the indictment are not cognizable on postconviction writ of habeas corpus. (State Habeas R. at 179) *See Ex parte Gibson*, 800 S.W.2d 548, 551 (Tex. Crim. App. 1990). Indeed, defects, errors and irregularities of either form or substance in an indictment or information must be raised by pretrial objection or be waived in postconviction proceedings. TEX. CODE CRIM. PROC. art. 1.14(b) (Vernon

6

2005). Clearly, the state habeas court relied on this procedural default to deny relief on Ringer's claim. This state procedural rule, firmly established and regularly followed by Texas courts, is an adequate state ground to support the court's denial of habeas relief and is independent of federal law. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Thus, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, Ringer's claim is procedurally barred from this court's review.

## *4. Batson Claim*

Ringer, who is African-American, claims the state used peremptory strikes against veniremembers 21, 53 and 54, three prospective African-American jurors, on discriminatory grounds, thereby subjecting him to an all-white jury. (Petition at 8-8(b); 3Reporter's R. at 225-28) In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court outlined the methodology for evaluating a claim that jurors were improperly stricken based on their race. Initially, the defendant must make a *prima facie* showing that the challenged strike has been employed in a racially discriminatory manner. Once this showing has been made, the prosecutor must articulate race-neutral selection criteria. The district court then must determine whether the defendant has established purposeful racial discrimination. *Id.* at 93-98.

Ringer raised his claim on direct appeal only as to veniremember 24, and the appellate court addressed the issue as follows:

> The prosecutor struck Chris E. Onyeador, a black veniremember. [Ringer] lodged his *Batson* challenge, and the trial court asked the State to explain the use of its peremptory challenge. The reasons the prosecutor provided were: (1) the veniremember's name gave her reasons to believe that he was born outside the country; (2) his accent gave her the impression that he was from Africa; (3) his accent was so "incredibly heavy" that she could not "understand most of what he said; (4) she had concerns as to whether he would be able to understand English

7

> sufficiently; and (5) he looked "a little...lost" a couple of times.
>
> [Ringer] argues that the prosecutor's first two reasons are race-based and that the remaining three are unsupported by the record. The Texas Court of Criminal Appeals has held that nationality [country of one's birth] is a race-neutral reason for striking a veniremember. Based on this reasoning, we are compelled to hold that the trial court did not err in denying [Ringer's] *Batson* challenge. [*Wamget v. Texas*, 67 S.W.3d 851, 859 (Tex. Crim. App. 2001), *cert. denied*, 535 U.S. 1080 (2002).] (State Habeas R. at 198)

The Supreme Court has not decided whether national origin is a prohibited racial or a race-neutral reason for striking a potential juror. Thus, the rejection of Ringer's *Batson* claim is not a decision that is contrary to, or involves an unreasonable application of clearly established law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

Furthermore, assuming Ringer made a *prima facie* showing that a challenged strike was used in a racially discriminatory manner and that the state continued by offering race-neutral explanations for their strikes, the question is whether Ringer has carried his burden to prove purposeful discrimination. *Hernandez v. New York*, 500 U.S. 352, 358-60 (1991). The critical question in determining whether a petitioner has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for the peremptory strike. *Purkett v. Elem*, 514 U.S. 765, 768 (1995). Typically, an evaluation of the prosecutor's state of mind based on demeanor and credibility lies within the province of the trial judge, and the trial court's findings in this context are entitled to the presumption of correctness. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 338-40 (2003). The state court, by denying Ringer's *Batson* claim, clearly found the prosecutor's explanations plausible and proceeded with the jury as selected. (3Reporter's R. at 236) The presumption of correctness not only applies to a state court's explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed

law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). In light of our required deference to the state court's findings, both as to state law and to facts, and Ringer's failure to present clear and convincing evidence refuting the state's court's determination of his *Batson* claim, the claim fails.

## 5. *Ineffective Assistance of Counsel*

Ringer claims that he received ineffective assistance of retained counsel because Kimball failed to object to the appointment of Alley to represent him and that he received ineffective assistance of appointed counsel because Alley (1) failed to object to the state's use of a prior offense against A.R. and photos from the case for which he received deferred adjudication probation during the guilt/innocence phase, (2) failed to object to the state's failure to call Sloan as the outcry witness or to subpoena Sloan himself, (3) failed to object to the state's threat of perjury charges against Regina Ringer, his wife, (4) failed to object to the nurse examiner's testimony as inadmissable hearsay, and (5) failed to conduct a pretrial investigation, interview the state's witnesses, review the state's file, or acquaint himself with Ringer's case. (Petition at 8(b)-8(h))

To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Strategic choices made by counsel after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Id.* at 690. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting

9

effects of hindsight. *Id.* at 689.

Where, as here, a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Pondexter v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003). Under this standard, the state court's application of *Strickland* must be shown to be not only erroneous, but objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003). Having conducted an independent review, the state courts' adjudication of Ringer's claims was neither erroneous nor objectively unreasonable.

Ringer claims he received ineffective assistance of retained counsel because Kimball did not object to the appointment of Alley and sat silent, allowing Alley to conduct the trial without his approval. (Petition at 8(b)) However, according to the affidavits of both Kimball and Alley, Ringer consented to the appointment of Alley. (State Habeas R. at 109, 126) The state habeas court accorded credibility to counsel's affidavits, and this credibility determination is entitled to a presumption of correctness. *See Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997). Ringer's mere assertion that he did not consent to the appointment, after the fact and without any support in the record, has no probative evidentiary value. *See Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

Ringer claims Alley was ineffective by failing to object to the state's introduction of a prior offense against A.R. for assault and photos in the case, for which he received deferred adjudication, during the guilt/innocence phase. (Petition at 8(c); 4Reporter's R. at 38-42) The state gave the

10

defense notice of its intent to introduce the prior offense as an extraneous offense, crime or act by Ringer. (Clerk's R. at 21-30) Ringer argues that evidence of the offense should not have been introduced by the state because motions in limine had been filed requesting the trial court to exclude evidence of prior convictions and enter an order instructing the state not to mention any of his prior convictions. (Clerk's R. at 21-30, 73) Although the record reveals two motions in limine were filed, there is nothing to indicate the trial court actually granted either motion. Furthermore, Alley testified, and the state habeas court found, that counsel did not object because evidence of prior acts between the same child victim and a defendant are admissible under article 38.37 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 38.37 (Vernon 2005). Ringer has not shown that counsel's failure to object to evidence that is admissible under Texas law was unreasonable.

Ringer claims counsel was ineffective by failing to object to the state's failure to call Sloan, A.R.'s mother, as the outcry witness or to subpoena Sloan himself, resulting in a violation of his right to confront the outcry witness. (Petition at 8(d)-(e)) According to Ringer, cross-examination of Sloan, who had to be subpoenaed to testify by the state, would have revealed that she made threats of blackmailing him, that she was not credible, and that she and A.R. had changed their minds about testifying because the allegations were false. (Petition at 8(d)-(e)) Counsel testified that it was to the defendant's advantage that Sloan did not testify. It was also his belief that her testimony would not have helped his client at best and that most likely it would have been quite damaging to his client. (State Habeas R. at 112-13)

The state habeas court rejected Ringer's claim, concluding that the decision whether to call a witness is trial strategy and a prerogative of trial counsel. (State Habeas R. at 176) Habeas claims involving counsel's failure to call witnesses are not favored because the presentation of witness

11

testimony is essentially strategy and thus within the trial counsel's domain, and speculations as to what these witnesses would have testified is too uncertain. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir. 1983). In reviewing ineffective assistance claims, federal habeas courts are highly deferential to counsel's trial strategy. *United States v. Mullins,* 315 F.3d 449, 453 (5th Cir. 2002). If the only evidence of a missing witness's testimony is from the defendant, courts view with great caution claims of ineffective assistance based on failure to call that witness. *See Sayre v. Anderson,* 238 F.3d 631, 635 (5th Cir. 2001); *Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986). Hypothetical or theoretical testimony will not justify the issuance of a writ based on counsel's failure to call a witness. *See Martin v. McCotter,* 796 F.2d 813, 819 (5th Cir. 1986). Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance. *Sayre,* 238 F.3d at 636 (complaint of uncalled witnesses failed where petitioner failed to present affidavits from the missing witnesses).

Ringer claims counsel was ineffective by failing to object to the prosecutor's threat of perjury against his wife Regina Ringer during the punishment phase, thereby depriving him an opportunity to adequately question her. (Petition at 8(e)-(f)) The state habeas court found that during Regina Ringer's testimony a question arose regarding possible perjured testimony and that, once a question of incriminating statements arose, the trial court had no option except to appoint counsel to advise her. The court further found that any objection to Regina Ringer's assertion of his Fifth Amendment right by counsel would not have been meritorious. (*Id.* at 173) Counsel is not required to make futile objections. *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1874 (2008).

12

Ringer claims counsel was ineffective by failing to object to the state calling the nurse examiner as a "defacto outcry witness" after notifying the defense that they intended to call A.R.'s mother as the outcry witness, thereby allowing inadmissible hearsay into evidence. (Petition at 8(f)-(g)) However, counsel stated that under state and federal rules of evidence, statements made for the purpose of medical treatment are exceptions to the hearsay rule and are admissible. (State Habeas R. at 177) Counsel is not required to make frivolous objections. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

Ringer claims counsel was ineffective by failing to interview witnesses, acquaint himself with the facts and evidence to be used against him, review the defense file and consult with him to obtain relevant facts, and missed the potential pretrial recantation by the complainant. (Petition at 8(h)) Counsel testified, however, that both he and Kimball interviewed potential defense witnesses identified in the information made available through Ringer and his wife and through the contents of Kimball's records and files, the court's files, and the prosecutor's files, including the evidence, court, conviction, probation, and judicial records, medical and other records contained therein. Counsel also spoke with Ringer repeatedly prior to and during trial keeping him abreast of developments, applicable law and his options during the proceedings. Finally, according to counsel, neither A.R. nor her mother would permit themselves to be interviewed by Kimball or himself prior to trial, and A.R.'s recantation did not occur until months after trial. (State Habeas R. at 112, 115) Based on counsel's testimony, the state habeas court concluded counsel conducted a reasonable investigation to prepare for the defense of the state's case against Ringer. (*Id.* at 177) The record reflects that counsel requested a continuance upon his appointment, but the trial court would not grant a continuance. (*Id.* at 110) Given counsel's efforts to prepare for Ringer's trial under such

13

severe time constraints and the fact that Harwell and Hamball had already prepared the case for trial, it cannot be said that the state court's determination was unreasonable under the *Strickland* standard. (*Id.* at 110, 126-27)

*6. Conclusion*

The state courts' adjudication of the claims presented does not appear contrary to or involve an unreasonable application of federal law in light of the record as a whole and is entitled to deference and the presumption of correctness.

## II.  RECOMMENDATION

Ringer's petition for writ of habeas corpus should be DENIED.

## III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until November 27, 2008.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(B)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice,

from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV. ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until November 27, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November 6, 2008.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE